## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ERIK GOTHBERG, | |
| Plaintiff, | 3:13 - CV - 01121 (CSH) |
| v. | |
| TOWN OF PLAINVILLE, MATTHEW CATANIA, JON ENO, DEAN CYR, ROBERT JAMES NACCARATO, ESQ. ADMINISTRATOR, TOWN OF SOUTHINGTON, JAMES P. SHANLEY EXECUTOR OF THE ESTATE OF MICHAEL SHANLEY, JAY SUSKI, AND SCOTT WOJENSKI | **September 3, 2015** |
| Defendants. | |

## RULING ON MOTION FOR JUDGMENT ON THE PLEADINGS, MOTIONS TO SUBSTITUTE AND MOTION TO AMEND THE COMPLAINT

**HAIGHT,** Senior District Judge:

This case arises out of an interaction between Plaintiff Erik Gothberg (hereinafter, "Plaintiff" or "Gothberg"), a Connecticut citizen and resident, and police officers of two Connecticut Towns: Plainville and Southington.

During the early morning hours of July 16, 2011, Plainville officers arrested Gothberg to enforce a warrant issued by Southington officers. Gothberg's complaint alleges that during the course of that arrest, he was shot by a Plainville officer and seriously injured. The complaint asserts federal civil rights claims under 42 U.S.C. § 1983, as well as claims under the Connecticut constitution; Connecticut statutes (Conn. Gen. Stat. §§ 7-465 and 52-557n); and the common law.

Based on their comparatively attenuated involvement in Gothberg's shooting, the Town of Southington, Southington police officers Michael Shanley, Jay Suski and Scott Wojenski

(collectively, the "Southington Defendants"), have moved for a judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  This Ruling decides that motion along with separate motions filed by Gothberg to substitute parties and to amend the complaint.[1]

## I

The following facts are derived from the operative complaint.  Doc. [88-3].[2]

The events giving rise to this litigation began on July 14, 2011, around which time Plaintiff was the subject of a criminal investigation directed by Michael Shanley, a lieutenant in the Southington Police Department.  *Id.* at ¶ 30.  As part of his investigation, Shanley contacted Plaintiff to discuss allegations made by Plaintiff's estranged wife, Lisa Gothberg.  Plaintiff cooperated with the investigation and voluntarily presented himself to Shanley at the Southington police station on July 14.  Also on that day, though for reasons not entirely clear in the complaint, Shanley seized the sole firearm owned by Plaintiff, and, along with other members of the Southington Police Department, "secure[d] Plaintiff's Southington residence, denying Plaintiff access to the residence and its contents."  *Id.* at p. 58, ¶ 34.

On July 15, Shanley obtained an arrest warrant for Plaintiff.  That evening, Lisa Gothberg informed the Southington Police that she had "suspicions . . . regarding . . . Plaintiff's emotional and mental state."  *Id.* at p. 59, ¶ 36.  Those suspicions caused the Southington Police "great alarm and concern, despite the fact that they knew Lisa Gothberg was extremely hostile towards Plaintiff."  *Id.*

---

[1] This Ruling does not consider Gothberg's allegations pertaining to the Plainville Defendants because those defendants have not filed a motion directed at the complaint.

[2] Document #88-3 is captioned "Proposed Second Amendment Complaint."  However, it is the operative complaint in this action because in a Ruling dated May 6, 2015, the Court granted Plaintiff leave to file it. *See* Doc. [90] at 3.

Accordingly, the Southington Police "initiated an emergency investigation into Plaintiff's whereabouts and requested his immediate seizure." *Id.* at ¶ 37.  Using GPS technology to track Plaintiff's cell phone, the Southington police determined that Plaintiff was at the AMC Loews 20 movie theater in Plainville.

At approximately 12:07 a.m. on the morning of July 16, Southington Police Detective Scott Wojenski, acting at the direction of Southington Police Sergeant Jay Suski, communicated Plaintiff's location to members of the Plainville police.  At approximately 2:20 a.m., the Plainville Police, including Defendants Sergeant Dean Cyr, Sergeant Timothy C. Mullaney, and Officer Jon Eno, as well as Southington officers, Suski and Wojenksi, approached and attempted to forcibly take Plaintiff into custody at gunpoint.  *Id.* at p. 62 ¶ 45.  Notwithstanding the fact that Plaintiff was cooperative and unarmed, at least two of the Plainville officers, Mullaney and Eno, repeatedly fired upon Plaintiff.  Plaintiff was seriously injured by a bullet that entered his left foot. *Id.* This lawsuit followed.

The 41-count complaint alleges that one or more of the several Defendants violated in various ways the federal and state constitutions, the state statutes, and the common law.  The Southington Defendants move to dismiss counts 25 through 41,  which are specifically directed at them.

## II

In general, "the standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

Under the now well-established *Twombly* standard, a complaint should be dismissed only if

it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007). The Second Circuit has explained that, after *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)), where the Second Circuit said:

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* at 72 (quoting *Iqbal*, 556 U.S. at 678). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 663-64). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 664.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiff's favor. *Zinermon v. Burch*, 494 U.S. 113, 118, (1990); *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 91 (2d Cir.2007). Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief will it grant dismissal pursuant to Rule 12(b)(6)." *Hertz Corp. v. City of N.Y.*, 1 F.3d 121, 125 (2d Cir.1993). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir.2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

4

III

**A.    42 U.S.C. § 1983 (Shanley, Suski and Wojenski)**

The complaint alleges that Shanley, Suski and Wojensk (collectively, the "Southington Officers") violated Plaintiff's rights secured by the Fourth, Sixth, and Fourteenth Amendments in violation of 42 U.S.C. § 1983.  In support thereof, the complaint avers that the Southington Officers, acting under color of state law, "caused to be transmitted to the Plainville Police highly inflammatory, inaccurate, and misleading information about Plaintiff and his state of mind"; that their transmission of that information caused the Plainville Police "to become agitated and excited" and ultimately arrest Plaintiff through the use of "excessive and unreasonable force"; that their transmission of that information was "reckless," "without just cause," and "intended to . . . deprive the Plaintiff of his rights secured by the Fourth, Sixth, and Fourteenth Amendments"; and that their conduct was the "direct and proximate" cause of Plaintiff's injuries."  Doc. [88-3] (count 28, 33, and 38).

The Southington Defendants argue that claims for excessive force cannot be predicated on the Fourteenth Amendment, that Plaintiff's claims under the Sixth Amendment are conclusory, that the complaint does not allege sufficient personal involvement to sustain a claim under the Fourth Amendment, and that they are, in any event, entitled to qualified immunity at this point in the proceedings.   I analyze the complaint's allegations under the Sixth, Fourth, and Fourteenth Amendments in turn.

**1.    Sixth Amendment**

The Southington Defendants argue that the complaint's claims under the Sixth Amendment

5

are conclusory and should be dismissed.[3]  As Plaintiff does not respond to this argument, it appears that he has abandoned his claims predicated on the Sixth Amendment.  In any event, there are no well-pleaded allegations supporting Plaintiff's claims that his rights under the Sixth Amendment were violated by the Southington Defendants.  Plaintiff's Sixth Amendment claims are insufficient as a matter of law and will be dismissed.

### 2.    **Fourth Amendment**

The Fourth Amendment guarantees the people's right to be secure "against unreasonable searches and seizures."  In the case at bar, there is no dispute that police officers "seized" Plaintiff Gothberg outside the movie theater during the early morning hours of July 16.  The legal sufficiency of Plaintiff's pleaded claims against Town of Plainville officers involved in that arrest is not at issue in the present motion, which is made by those Town of Southington police officers whom I refer to collectively as "the Southington Defendants."

The Southington Defendants argue that Plaintiff's Fourth Amendment claims fail because the complaint does not sufficiently allege that Shanley, Suski and Wojenski were personally involved in the alleged constitutional deprivations.  In that regard, the Southington Officers suggest that they

---

[3] The Sixth Amendment states in its entirety:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

U.S. Const. amend. VI.

cannot be liable for communicating information about Plaintiff to the Plainville police. They note, moreover, albeit in the context of a different argument (see negligence discussion, *infra*) that the complaint does not even allege that Shanley was present at the Loews theater when Plaintiff was arrested and allegedly shot.[4]

In response, Plaintiff contends that by communicating inaccurate information to the Plainville police, Shanley, Suski and Wojenski participated directly in the violation of his constitutional rights. Plaintiff also argues that Shanley is liable on the alternate theory that he supervised Suski and Wojenski who acted unlawfully.

Section 1983 provides in part that:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected,

---

[4]  The complaint does not explicitly allege that Shanley was present when Plaintiff was arrested and allegedly shot, but is somewhat ambiguous in that regard. *See, e.g.,* Doc. [88-3] (pp. 10-11, ¶ 33) ("members of the Plainville Police Department, supported and directed by members of the Southington Police Department, including Defendants SHANLEY, SUSKI, and WOKENSKI, approached and surrounded the Plaintiff . . . at gunpoint"); *id.* at p. 62, ¶ 45, ("members of the Southington Police Department, including Defendants SUSKI and WOJENSKI, who were at all times under the direction and control of Defendant SHANLEY, approached . . . Plaintiff . . . at gunpoint"). A reading of the complaint that does not place Shanley at the scene of the incident appears to be supported by Plaintiff's characterization of events in his opposition to the instant motion. *See, e.g.,* Doc. [57] at p. 3 (referring only to Suski's and Wojenski's efforts to "physically seize" and "forcibly take" Plaintiff into custody); *id.* at p. 21 (stating "Plaintiff has set forth facts which place both Defendant Suski and Defendant Wojenski at the scene of Plaintiff's assault," but not alleging the same with respect to Shanley); *id.* at 26 (stating that "Suski and Wojenski were direct physical participants in the seizure of Plaintiff" but not alleging that Shanley was also present). Moreover, had Plaintiff intended to allege that Shanley was present when Plaintiff was apprehended, I think it unlikely that his experienced counsel would have failed both to make such a critical allegation explicit in the complaint and to refute in his opposition to the instant motion the Southington Defendants' interpretation of the complaint. I therefore do not construe the complaint as alleging that Shanley was present outside the Loews theater on the morning of July 16. Had Plaintiff intended to allege otherwise, he is free, as always, to file a motion to amend the complaint. Such a motion would be analyzed under the standards set forth in Rule 15 of the Federal Rules of Civil Procedure and *Foman v. Davis,* 371 U.S. 178 (1962).

> any citizen of the United States . . . to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall
> be liable to the party injured.

42 U.S.C. § 1983.  Thus, to state a claim under Section 1983, a plaintiff must show: "(1) actions taken under color or law; (2) deprivation of constitutional or statutory right; (3) causation; and (4) damages." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008).  Moreover, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  Personal involvement can be predicated on, *inter alia*, theories of direct participation in the deprivation of constitutional rights or gross negligence in the supervision of subordinates who committed wrongful acts.  *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  The Second Circuit has construed the phrase "direct participation" to include "personal participation by one who has knowledge of the facts that rendered the conduct illegal."  *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001); *accord Gronowski v. Spencer*, 424 F.3d 285, 293 (2d Cir. 2005).  In this regard, liability may be found against "a person who, with knowledge of the illegality, participates in bringing about a violation of the victim's rights but does so in a manner that might be said to be 'indirect.'" *Id.*

Here, the involvement of Shanley, Suski and Wojenski in bringing about the Plainville police department's use of excessive force, can at most be characterized as indirect.  The complaint does not allege that these Southington officers used excessive force on Plaintiff themselves, or failed to intercede personally during Plaintiff's arrest to prevent Plainville officers' use of excessive force. The complaint alleges only that Shanley, Suski and Wojenski violated Plaintiff's Fourth Amendment rights by transmitting inflammatory and inaccurate information to the Plainville Police, which in

turn, caused the Plainville Police to effect Plaintiff's arrest through unconstitutional means.

The Southington Officers' communication of inflammatory and inaccurate information about Plaintiff to the Plainville police was not, in and of itself, a violation of Plaintiff's Fourth Amendment right to be secure in his person.  In *Provost*, 262 F.3d at 155, the Second Circuit ruled that "'direct participation' as a basis for liability in this context [an action for unconstitutional arrest] requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." (footnote omitted).  Shanley's, Suski's and Wojenski's indirect role in bringing about the Plainville police's use of excessive force violated the Fourth Amendment only if, at the time they transmitted the information, those officers *knew* that their conduct was depriving Plaintiff of his rights under the Fourth Amendment, or causing those rights to be deprived. While those officers may have suspected that their reckless communication of inflammatory and inaccurate information would increase the likelihood of the Plainville police's use of excessive force, the fact that the alleged transmission of that information occurred before Plainville's alleged use of excessive force precludes the conclusion that Shanley, Suski and Wojenski had actual knowledge that their conduct was violating Plaintiff's  Fourth Amendment right to be secure in his person. Absent plausible allegations of personal involvement, the complaint's allegations based on the Fourth Amendment will be dismissed.[5]

### 3.    <u>Fourteenth Amendment</u>

The Southington Defendants perceive Plaintiff's Fourteenth Amendment claim to be a  claim for constitutional violations based on law enforcement's excessive use of force.  Given that reading

---

[5] Since the complaint does not plausibly allege that Suski and Wojenski personally participated in the deprivation of Plaintiff's Fourth Amendment rights, I need not consider whether Shanley may be found liable on a theory that he improperly supervised the conduct of those officers.

of the complaint, the Southington Defendants contend that Plaintiff's claim must be analyzed under the Fourth Amendment, and not under the Due Process Clause of the Fourteenth Amendment.

In response, and quite apart from the Southington Defendants' characterization of his Fourteenth Amendment claims as being based on the use of excessive force, Plaintiff contends that the Southington Officers violated his substantive due process rights under the Fourteenth Amendment by conveying inaccurate and misleading information to the Plainville police with the intention of causing harm to Plaintiff.

In their reply brief, the Southington Defendants expressly declined to respond to Plaintiff's argument based on this quite different basis for constitutional liability.  Doc. [61] at 2.  There is arguably sufficient cause under our Local Rules to deny this aspect of the motion, as a matter of course, where, as here, the Southington Defendants, who bear the burden on the instant motion, have not addressed Plaintiff's substantive due process claims.  *See* D. Conn. Loc. R. 7(a).  The oversight notwithstanding, I consider whether relief can be granted on Plaintiff's substantive due process claims.

It is well-settled that "where another provision of the Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claim under that explicit provision and 'not the more generalized notion of "substantive due process."'" *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Therefore, "*all* claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."  *Graham v. Connor*, 490 U.S. at 395 (emphasis in original).  "Because the Fourth

10

Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive government conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.* (footnote omitted).

Had Plaintiff asserted a claim against the Southington Defendants based on their use of excessive force in violation of rights secured by the Fourteenth Amendment, it is beyond cavil that such a claim should be analyzed under the Fourth Amendment.  The complaint, however, does not plead such a constitutional deprivation on the part of the Southington police.  Plaintiff's theory of the case is that the *Plainville* police, not the *Southington* police, applied the force (excessive or not) to Plaintiff.  Plaintiff's theory against the Southington police is that the officers from that town, with the intention of depriving Plaintiff of rights secured by the Fourteenth Amendment, and specifically, with the intention of causing the Plainville police to view Plaintiff with undue alarm, recklessly communicated to the Plainville police inflammatory and inaccurate information about Plaintiff and his state of mind.  The question is whether  such allegations state a claim under the Due Process Clause of the Fourteenth Amendment.

The Due Process Clause of the Fourteenth Amendment provide that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  "This clause has been interpreted as a 'protection of the individual against arbitrary action of government,' which has both a procedural component protecting against the 'denial of fundamental procedural fairness,' as well as a substantive component guarding the individual against 'the exercise of power without any reasonable justification in the service of a legitimate government objective." *Lombardi v. Whitman*, 485 F.3d 73, 78-79 (2d Cir. 2007) (internal citations omitted).  "The substantive component of due process," at issue here, "encompasses among other things, an individual's right to bodily integrity free

from unjustifiable governmental interference." *Id.* at 79 (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997); *see also Ingraham v. Wright*, 430 U.S. 651, 673 (1977) (Due Process Clause guarantees "a right to be free from and to obtain judicial relief, for unjustified intrusions on personal security.").

"The Due Process Clause, however, 'does not transform every tort committed by a state actor into a constitutional violation.'" *Id.* (quoting *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 202 (1989). "Government action resulting in bodily harm is not a substantive due process violation unless 'the government action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* (some internal quotations omitted and quoting *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005)). Furthermore, because the Due Process Clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security," *DeShaney,* 489 U.S. at 195, "[o]nly an affirmative act can amount to a violation of substantive due process." *Lombardi*, 485 U.S. at 79.

Law enforcement officers are capable of an infinite variety of "affirmative acts" in the performance of their duties. Whether particular acts "amount to a violation of substantive due process" is a fact-intensive question not amenable to an all-inclusive definition. However, in a series of decisions, the Second Circuit has recognized a "state created danger" to an individual which, if the danger is realized and the individual injured in consequence, gives rise to a constitutional claim by the individual that his substantive due process rights were violated.

Liability on the basis of the state created danger doctrine, which most frequently involves the acts of police departments, depends upon the nature and effect of police officers' conduct. The Second Circuit first articulated what came to be known as an actionable state created danger in

*Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993), *overruled on other grounds, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).  The Second Circuit held in *Dwares* that a claim based on a violation of the Due Process Clause of the Fourteenth Amendment could be stated where the state "in some way had *assisted in creating or increasing the danger to the victim*. . . ."  985 F.2d at  99 (emphasis added).  That concept, of a danger to an individual created or assisted by state actors' conduct, was clarified and expanded by the Second Circuit in its successive opinions in *Hemphill v. Schott*, 141 F. 3d 412 (2d Cir. 1998); *Pena v. DePrisco*, 432 F.3d 98 (2d Cir. 2005); *Okin v. Village of Cornwall on Hudson Police Dep't.,* 577 F.3d 415 (2d Cir. 2009); and most recently, *Pearce v. LaBella*, 473 Fed.Appx. 16 (2d Cir. 2012) (summary order).

In *Dwares* the plaintiff, Bruce Dwares, attended a rally held in Washington Square Park in New York City, at which an American flag was burned.  Dwares was assaulted by "skinheads" who repeatedly hit him on the head with a bottle.  In Dwares's Section 1983 action, he alleged that the assault occurred in the presence of the defendant police officers who not only failed to intervene and to protect him from harm, also conspired with the "skinheads" to permit that group to harass and "beat up flag burners with relative impunity, assuring the 'skinheads' that unless they got totally out of control they would not be impeded or arrested."  *Id.* at 99.  In concluding that Dwares had stated a claim under the Due Process Clause, the Second Circuit reasoned:

> It requires no stretch to infer that such prior assurances would have increased the likelihood that the 'skinheads' would assault demonstrators.  Thus, in the present case, the complaint asserted that the defendant officers indeed had made the demonstrators more vulnerable to assaults.

*Id.*

*Dwares* is the seminal Second Circuit case in the development of the state created danger doctrine.  In its subsequent opinion in *Pena v. DePrisco*, 432 F.3d at 108, the Second Circuit said that "in *Dwares,* we read *DeShaney*" [489 U.S. 189]

> to imply that, though an allegation simply that police officers had failed to act upon reports of past violence would not implicate the victim's rights under the Due Process Clause, an allegation that the officers in some way had assisted in creating or increasing the danger to the victim would indeed implicate those rights.

That is the statement of a rule of substantive due process liability currently prevailing in the Second Circuit, as illustrated by the more recent cases.  In *Hemphill*, 141 F.3d 412, the police allegedly "aided and abetted" a robbery victim, by giving back the robbery victim's gun and taking him along on a chase after the robber, which ended in the robbery victim shooting the robber in the presence of the police officers.  In *Okin*, 577 F.3d 415, there were genuine issues of material fact as to whether police officers "implicitly but affirmatively encouraged [a third-party's] domestic violence," where officers, in response to plaintiff's numerous and ongoing complaints about the third-party, refused to arrest the third-party, interview him, or file a domestic incident report.  *Okin*, 577 F.3d at 430.

While *Dwares*, *Hemphil* and *Okin*, were based on allegations that police officers, through their affirmative actions, created a danger through their affirmative conduct by condoning or encouraging the actions of a private party, the Second Circuit's decision in *Pena*, 432 F.3d 98, recognized a claim for substantive due process rights where police officers affirmatively endorsed the wrongful conduct of *another police officer.*  In that case, the complaint alleged that various members of the New York City police department sanctioned the abuse of alcohol and drunk driving of another member of the police department, which resulted in that officer striking and killing three

14

pedestrians with his car.  *Pena v. DePrisco*, 432 F.3d at 111-12.  Accordingly, under *Pena*, a "state created danger" due process claim is not limited to instances where defendant officers' condone or encourage the actions of private citizens.

The Second Circuit cited and applied *Pena* when the court of appeals decided *Pearce v. La Bella*, 473 Fed.Appx. 16.  The plaintiffs in *Pearce* were representatives of the estate of Kristin Longo, who was murdered by her husband Joseph Longo, a Utica, New York police officer, who killed himself after the murder.  Defendant LaBella was the Utica police chief.  Plaintiffs' complaint alleged *inter alia* that although Joseph Longo's history of domestic violence had spread through the police department, LaBella denied requests that he take action and confiscate Longo's weapons, and allowed Longo to remain on duty without psychiatric or mental health intervention.  The Second Circuit, affirming the district court's denial of LaBella's Rule 12(b)(6) motion to dismiss the complaint, said:

> At least at the pleading stage, these allegations suffice to defeat LaBella's claim of qualified immunity.  They sufficiently state a claim under the "state created danger" doctrine because these facts, if true, would permit a jury to conclude that LaBella "communicate[d] to a private person" — Joseph Longo — "that he or she will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others."  *Pena*, 432 F.3d at 111.

473 Fed.Appx. at 19.

In the case at bar, the complaint does not include the phrase "state created danger."  *See* Doc. [88-3].  But Plaintiff Gothberg's allegations describing the communications between the Southington police and the Plainville police on the subject of Gothberg's requested arrest unmistakably invoke the state created danger doctrine.  The complaint casts the Southington police in the roles of state

actors, who by their descriptions of Gothberg and his propensities created the danger to Gothberg that ultimately came to pass: the Southington police falsely and intentionally told the Plainville police that Gothberg was armed, dangerous and unstable, inevitably leading the Plainville police to use a degree of force in arresting Gothberg that was unnecessary in the true circumstances and thus constitutionally excessive.

These allegations focus principally upon the conduct of defendant Michael Shanley, a lieutenant in the Southington police department who, according to the complaint, interviewed Gothberg at the Southington police station on July 14, 2011, confiscated Gothberg's only firearm, "secured" Gothberg's residence by denying Gothberg access to it and its contents, and on July 15 obtained a warrant to arrest Gothberg, which Southington officers, at Shanley's direction, asked Plainville officers to execute during the early morning of July 16.  The complaint describes Shanley's conduct during this phase of the case as follows:

> 30.   On July 14, 2011 Defendant SHANLEY was directing, supervising, and controlling a criminal investigation into Plaintiff.

> \*     \*     \*     \*     \*

> 32.   On July 14, 2011 as part of his investigation Defendant SHANLEY contacted the Plaintiff and requested that he come to the Southington Police Department to discuss the police investigation and allegations made by his estranged wife, Lisa Gothberg.

> 33.   On July 14, 2011 the Plaintiff willingly and voluntarily presented himself to Defendant SHANLEY at the Southington Police Station, and cooperated with the police investigation.

> \*     \*     \*     \*     \*

> 35.   On July 15, 2011 after the meeting described above Defendant SHANLEY sought and obtained an arrest warrant for Plaintiff.

36.   On the evening of July 15, 2011 the plaintiff's estranged wife, Lisa Gothberg, who Southington Police knew from their investigation was extremely hostile and antagonistic towards Plaintiff, relayed numerous suspicions to the Southington Police regarding the Plaintiff's emotional and mental state, which information caused them great alarm and concern, despite the fact that they knew Lisa Gothberg was extremely hostile towards Plaintiff.

37.   Without attempting to investigate, verify, or confirm Lisa Gothberg's suspicions by contacting Plaintiff, Southington Police initiated an emergency investigation into Plaintiff's whereabouts and requested his immediate seizure.  Plaintiff's location was eventually ascertained, by GPS tracking of his cell phone, at the AMC Loews Plainville 20, in Plainville, Connecticut.

38.   On the morning of July 16, 2011, and at all times mentioned herein, Southington police officers, Defendants SUSKI and WOJENSKI, were under the direct supervision and control of Defendant SHANLEY in the performance of their duties relating to the arrest of Plaintiff and were acting pursuant to his supervision, direction, and control.

39.   On July 16, 2011 at approximately 12:07 a.m., Defendant [Southington police officer] WOJENSKI, at the direction of Defendant [Southington police officer] SUSKI, contacted Plainville Police and informed them that the Plaintiff, for whom Southington had obtained an arrest warrant, was at the AMC Loews Plainville 20.

40.   On said date and at said time Officer WOJENSKI provided Plainville Police with information derived in part from Lisa Gothberg, which they knew or should have known, was not accurate or verified by any independent investigation.

41.   Defendant SHANLEY knew or should have known that providing said unverified and inaccurate information to Plainville Police would cause them to view Plaintiff as extremely dangerous, and to act with extreme and unrestrained haste and use extreme and unrestrained force in their attempt to seize Plaintiff.

42.   In direct response thereto Plainville Police dispatched numerous heavily armed police officers in marked and unmarked patrol units to the AMC Loews Plainville 20, located at 220 New Britain Avenue in Plainville, for the purpose of assisting Southington

Police in the armed and unduly aggressive seizure of the Plaintiff.

*      *      *      *      *

    46.   Acting recklessly and without any regard for the probable consequences of injury to Plaintiff, Defendant SHANLEY caused to be transmitted to the Plainville Police highly inflammatory, inaccurate, and misleading information about Plaintiff and his state of mind, which characterized him as unstable and dangerous, with the intention of causing Plainville Police to become agitated and excited and thus approach the seizure of Plaintiff in an unnecessarily aggressive and heavily armed manner, thus placing Plaintiff in imminent danger and peril of physical assault and battery by the Plainville Police.

*      *      *      *      *

    48.   Defendant SHANLEY's reckless communication . . . was unnecessary, excessive, and unlawful, and was intended to and did deprive the Plaintiff of rights secured by the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution . . .

Doc. [88-3].   Comparable allegations are made with respect to officers Suski and Wojenski.  *Id.* (counts 33 and 38).

These portions of the complaint contain conclusory allegations which the Court disregards in evaluating the sufficiency of the pleading on a defense Rule 12(b)(6) motion to dismiss the complaint.  The Court's obligation on such a motion to accept as true the well-pleaded factual allegations of the complaint "is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678, and the Court is "not bound to accept as true as legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555.  However, the quoted paragraphs in Gothberg's complaint contain factual allegations sufficient to assert the claim that the Southington police, during their communications with the Plainville police, knowingly conveyed false or unsubstantiated information about Gothberg and the dangers he might pose to arresting officers, with the intent of inducing the Plainville police to use

18

enhanced force when they came to arrest Gothberg outside the movie theater in the early morning of July 16.

This alleged scenario states a substantive due process claim under the Second Circuit's state created danger doctrine, as developed in the cited cases. The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." Gothberg was deprived of his liberty when the Plainville police arrested him, a deprivation enhanced in severity when the police shot Gothberg during the arrest. Defendants' theory of the case is that this deprivation of liberty comported with "due process of law" because the Southington police had obtained a warrant for Gothberg's arrest. True enough: but the Fourth Amendment protected Gothberg from an "unreasonable" seizure, which poses the question whether the Plainville police used force that was reasonable in the circumstances surrounding Gothberg's arrest. A constitutionally valid arrest may give rise to a constitutional violation if state actors use excessive force in effecting the arrest. The degree of permissible force depends upon the circumstances. Gothberg's theory against the Southington police is that they gave false and misleading information to the Plainville police about Gothberg and his propensities. The case against the Southington police comes down to this: The Plainville police officers' use of force in subduing and shooting Gothberg might have been reasonable if what the Southington police said about Gothberg was true, but it was not true, and the force used against Gothberg was objectively excessive in the actual circumstances as they existed.[6] This theory of the case states a claim under the state created danger doctrine

---

[6] The Plainville Defendants may be in a position to argue that they entertained the subjective belief that this amount of force was necessary to arrest Gothberg because of what the Southington police told them about Gothberg. That question does not arise on this motion, which is concerned only with Plaintiff's claims against the Southington Defendants.

because the false statements made by the Southington police to the Plainville police "assisted in creating or increasing the danger" to Gothberg of an excessively forcible arrest (again quoting *Dwares*).

On the basis of this Second Circuit authority, I conclude that the complaint at bar adequately alleges that the affirmative actions of the Southington Officers — namely their reckless transmission of information designed to make the Plainville Police unduly agitated and excited, respond toward Plaintiff in an unnecessarily aggressive manner, and to deprive him of his civil rights — created an opportunity for the Plainville Police to harm Plaintiff or increased the risk that they would do so. The complaint's allegations of the Southington Officers' wrongdoing is arguably more overt than other conduct the Second Circuit has recognized as supporting a "state created danger" due process claim.  In *Pena* and *Okin* for example, the Second Circuit discerned actionable "affirmative conduct" where police officers implicitly condoned or encouraged the wrongful actions of third-parties.  *Okin*, 577 F.3d at 430 ("genuine issues of material fact as to whether defendants implicitly but affirmatively encouraged . . . domestic violence"); *Pena,*, 432 F.3d at 112 (discerning a cognizable claim where "plaintiffs assert that prior assurances of impunity were actually, albeit implicitly, communicated").  Here, the complaint alleges that the Southington Officers intended to incite wrongful conduct by expressly communicating inflammatory and inaccurate information to the Plainville police.

To state a substantive due process violation, a plaintiff, in addition to alleging affirmative government action, must also show that the government action was "so egregious, so outrageous, that it may be fairly said to shock the contemporary conscience."  *County of Sacrament v. Lewis*, 523 U.S. 833, 847 n. 8 (1998).  Police conduct does not shock the conscience unless there is "intent to

harm suspects physically or to worsen their legal plight." *Id.* at 854.  In *Pena*, the Second Circuit

reflected on whether the state action in *Dwares* rose to the level conscience shocking:

> We did not, in *Dwares*, explicitly ask whether the officers' conduct
> there in issue "shocked the conscience."  We did, however, note that
> the complaint before the court made "sufficient factual allegations
> from which a factfinder could infer *intentional* discrimination."
> *Dwares*, 985 F.2d at 99 (emphasis added); *see also id.* ("Proof of an
> agreement by defendant officers with 'skinheads' expressly to permit
> flag burners to be beaten up without official interference or reprisal,
> and of a failure by the officers to interrupt such beatings inflicted in
> their presence, would easily permit the finder of fact to infer that the
> officers *intended* the flag burners *qua* flag burners to suffer the
> injuries inflicted." (emphasis added)).  If the question had been asked
> explicitly, we think that we would have answered that such
> intentional inflict of injury would shock *even the least sensitive of
> contemporary consciences*.

*Pena*, 432 F.3d at 112 (emphasis in last sentence added).  In both *Dwares* and the case at bar

(according to Plaintiff's allegations), defendant officers communicated information to a third-party

that resulted in, or increased the risk of harm to the plaintiff.  In *Dwares*, officers assured 'skinheads'

they could assault flag burners with impunity; in the case at bar, the Southington Officers allegedly

communicated inaccurate and inflammatory information about Plaintiff and his state of mind to the

Plainville police.  In *Dwares* the officers' conduct was allegedly motivated by intentional

discrimination.  In this case, the complaint alleges that the Southington Officers *recklessly*

communicated inaccurate and inflammatory information to the Plainville police with the *intention*

of depriving him of his rights under the Fourteenth Amendment (i.e., Plaintiff's right under the Due

Process Clause to be free from bodily injury).  I therefore conclude that the complaint alleges facts

that are sufficiently conscience shocking to sustain claims based on substantive due process

violations.

A final point should be made about Plaintiff's substantive due process claim.  This Ruling holds that the complaint contains allegations sufficient to survive a motion to dismiss.  I have considered only the contents of the pleading.  Plaintiff Gothberg has the ultimate burden of proving that the communications between the Southington and Plainville police departments leading up to his arrest were as he alleges them to have been.  Gothberg must sustain that burden by admissible proof from competent sources (presumably Gothberg himself did not participate in or eavsedrop upon these intra-law enforcement conversations).  If the Defendant police officers involved are placed under oath and give a different account of these communications, Plaintiff cannot prove his case by the sole means of attacking their credibility.  "When the testimony of a witness is not believed, the trier of fact may simply disregard it.  Normally the discredited testimony is not considered a sufficient basis for drawing a contrary conclusion." *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512 (1984). *See also Moore v. Chesapeake & O. Ry. Co.*, 340 U.S. 573, 577 (1951) ("If one does not believe the engineer's testimony that he stopped after — indeed, because of — the fall, then there is no evidence as to when decedent fell.  There would still be a failure of proof."); *Bunt v. Sierra Buttue Gold Min. Co.*, 138 U.S. 483, 485 (1891) ("The suggestion that because the only witnesses of the accident, and whom the plaintiffs were therefore compelled to call, were in the defendant's employ, and might be prejudiced in its favor, the question how far they were so biased should have been submitted to the jury, is of no weight.  Theirs being the only testimony on the point, disbelief of their testimony could not supply a want of proof.").

This principle may be called into play in the case at bar on motions for summary judgment after completion of full discovery.  It is not unusual for a plaintiff's case to survive a motion to dismiss at the pleading stage, only to succumb to a summary judgment motion following discovery.

*See, e.g., Craig v. Yale University School of Medicine*, 838 F.Supp.2d 4 (D.Conn. 2011) (on motion to dismiss), 2013 WL 789718 (D.Conn. March 4, 2013) (on motion for summary judgment), where Judge Arterton denied defendant's motion to dismiss because "Plaintiff has pled sufficient facts to make out a cognizable 'intersectional claim,' or a 'race plus' claim of discrimination against black males," 838 F.Supp.2d at 9, and following discovery "consider[ed] `the entire record to determine if Plaintiff has come forward with sufficient evidence to persuade a fact finder that Defendants intentionally discriminated against him on the basis of his race," 2013 WL 789718 at *11, answered that question in the negative, and gave summary judgment rejecting the claim.

In noting these realities of litigation, the Court intimates no view as to how the case at bar may progress through its later stages.

### 4.   <u>Qualified Immunity</u>

Having determined that the complaint states claims for violations of Plaintiff's substantive due process right to be free from state created dangers, I turn to whether the Southington Officers are entitled to qualified immunity at this stage of the proceedings.

The privilege of qualified immunity generally shields government officials from liability for damages on account of their performance of discretionary official functions "insofar as their conduct does not violate established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "In general, public officials are entitled to qualified immunity if (1) their conduct does not violate a clearly established right, or (2) it was objectively reasonable for them to believe that their acts did not violate those rights." *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996).  In regard to the latter, as the complaint alleges intentional conduct of the Southington Officers designed to deprive Plaintiff of his civil rights, I am unable to

23

conclude at this juncture that the actions of those officers were objectively reasonable.  In regard to the former, to determine whether a particular right was clearly established at the time defendants acted, a court should consider:

> (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991), *cert denied*, 503 U.S. 962 (1992); *see also Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993).

The Second Circuit cases cited *supra* make it plain that Plaintiff's right under the Due Process Clause to be free of a state created danger was established as early as February 1993, when *Dwares* was decided.  If there was any question as to whether this theory of liability encompassed the affirmative conduct of defendant officers who condoned or encouraged the actions of *other* police officers, such a question was resolved in the affirmative when *Pena* was decided in December 2005. As this case involves conduct occurring in July 2011, I conclude that Plaintiff's right to be free at that time of a state created danger was clearly established, and that the Southington Officers are not entitled to qualified immunity at this time.

That conclusion is also mandated by the Second Circuit's ruling in *Pearce v. LaBella*, where the plaintiffs adequately pleaded a due process claim arising out of a state created danger, leading the Second Circuit to hold: "At least at the pleading stage, these allegations suffice to defeat LaBella's claim of qualified immunity. . . . As this conclusion is based on caselaw that was well established at the time of LaBella's actions in 2009, qualified immunity would not apply if the

allegations are successfully proven."  473 Fed.Appx. at 19.

Consistent with these cases, this Court's denial of the Southington Defendants' defense of qualified immunity speaks only of the circumstances existing "at the pleading stage," and is without prejudice to a reassertion of qualified immunity by one or more officers as the proof comes in.  That is the teaching of the Second Circuit's recent decision in *Garcia v. Does*, 764 F.3d 170 (2d Cir. 2014).  Plaintiffs were Occupy Wall Street protestors who alleged they were subject to unlawful arrest while crossing the Brooklyn Bridge, and federal and state law claims against the City of New York, its police commissioner, and 40 "John and Jane Doe" police officers who participated in the arrests.  The police officer defendants asserted qualified immunity as one of the bases for dismissing the complaint.  The district court denied qualified immunity at that stage of the case.  The Second Circuit affirmed.  Judge Lynch's reasoning is instructive:

> We emphasize that the procedural posture of this case presents a formidable challenge to defendants' position.  They urge us to find that qualified immunity is established for all defendants based on *plaintiffs'* version of events (plus a few inconclusive photos and videos).  The evidence, once a full record is developed, may contradict plaintiffs' allegations, or establish that some or all of the defendants were not aware of the facts that plaintiffs allege would have alerted them to the supposed implicit permission.  We express no view on whether some or all of the defendants may be entitled to qualified immunity at a later stage of the case.  But to reverse the district court's denial of qualified immunity on a motion to dismiss, we would have to say that on the basis of plaintiffs' account of events, no officer who participated in or directed the arrests could have thought that plaintiffs were invited onto the roadway and then arrested without fair warning of the revocation of this invitation.  Since we cannot do so on this limited record, we affirm the judgment of the district court.

764 F.3d at 182 (citation and footnotes omitted).  Judge Lynch also referred to the Second Circuit's opinion in *Pena*, which he summarized as "affirming denial of application for qualified immunity

at motion to dismiss stage without prejudice to renew application at a later stage." *Id*.

It is sensible to follow this example in the case at bar. At present, all we have to go on is Plaintiff Gothberg's account of the communications between the three Southington police officers (Shanley, Suski and Wojenski) and Plainville officers on the subject of arresting Gothberg. If Plaintiff can prove his allegations, it is difficult to see how any of the Southington officers could rely on a defense of qualified immunity. However, as the Second Circuit's analysis in *Garcia* demonstrates, when the evidence is developed, some officers involved in the incident may be able to claim qualified immunity and others may not. For example, it is conceivable — I put it no higher than that, because there is no proof yet — that Lieutenant Shanley, who confiscated Gothberg's gun before giving Suski and Wojenski instructions to contact the Plainville police, may have more difficulty sustaining a qualified immunity defense than the other two officers, who appear to have followed Shanley's orders.[7]

All this is for the future. For the present, and for the foregoing reasons, the Court holds that the Southington Defendants are not entitled to assert the defense of qualified immunity, without prejudice to the right of any or all of them to assert the defense at a later stage of the case.[8]

## B.   Article First, § 8 of the Connecticut Constitution (Shanley, Suski, and Wojenski)

---

[7] I phrase the matter in this fashion for the sake of clarity. Shanley is now deceased. The case proceeds against his estate.

[8] I complete my analysis of the federal constitutional claims alleged in the complaint with this footnote. Counts 29, 34 and 39 of the complaint are directed at the Town of Southington and bear the caption "CIVIL RIGHTS." The allegations in support of those claims state that the Town of Southington is liable for the conduct of Shanley, Suski and Wojenski pursuant to Connecticut General Statutes §§ 7-465 and 52-557n. Those claims are discussed, *infra*. However, to the extent counts 29, 34 and 39 may be construed as alleging that the Town of Southington is directly liable under 42 U.S.C. § 1983 for the unconstitutional actions of its officers, such claims fail for the reasons stated in *Monell v. Dep't of Social Services,* 436 U.S. 658 (1978).

The Southington Defendants move to dismiss Plaintiff's claims based on violations of his rights under Article First, § 8 of the Connecticut Constitution ("No person shall be . . . deprived of life, liberty or property with due process of law") on grounds that there is no cognizable private right of action for money damages under that section of the state constitution. Plaintiff argues that a cause of action under Article First, § 8 of the Connecticut Constitution is implied in this case by the Connecticut Supreme Court's decision in *Binette v. Sabo*, 244 Conn. 23 (1998). Although I think that a state court might discern a *Binette*-style of cause on these facts under Article First, § 8 of the Connecticut Constitution, I conclude that whether to recognize such a claim raises a "novel or complex issue of state law," 28 U.S.C. § 1367(c)(1), and thus decline to exercise supplemental jurisdiction over it. *See Lopez v. Smiley*, 375 F. Supp. 2d 19 (D. Conn. 2005) (Kravitz, *J.*) (discussed *infra*).

In *Binette*, Joseph and Janet Binette, claimed that police officers entered their home without a warrant or their permission, pushed Mrs. Binette, which caused her to fall against a wall and over a table, repeatedly slammed Mr. Binnete's head against a car, and struck Mr. Binette in the head while he was lying on the ground experiencing an epileptic seizure. *Binette v. Sabo*, 244 Conn. at 26. The Binettes brought an action in the District of Connecticut alleging violations of their rights under Article First, §§ 7 and 9 of the Connecticut Constitution to be free from unreasonable searches and seizures and unlawful arrests. The Connecticut Supreme Court granted certification of this question posed by the district court: "whether, in the circumstances presented, the Connecticut constitution gives rise to a private cause of action for money damages stemming from alleged violations of article first, §§ 7 and 9, of our state constitution." *Id.* at 25-26. The court answered the certified question in the affirmative, concluding that the Connecticut constitution gives rise to a

27

private cause of action for monetary damages under Article First, §§ 7 and 9.  In reaching that conclusion, the court drew heavily from the reasoning in *Bivens v. Six Unknown Names Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), in which the United States Supreme Court held that federal courts possess the power to create a private damages action directly under the federal constitution.  *Id.* at 33-50.

The *Binette* Court emphasized, however, that its holding "does not mean that a constitutional cause of action exists for every violation of [the] state constitution." *Id.* at 47.  Rather, the court stated that whether to recognize a cause of action for alleged violations of other state constitutional provisions must be "determined on a case-by-case basis" through a "multifactor analysis" that examines "the nature of the constitutional conduct; the nature of the harm; separation of powers considerations and other facts articulated in *Bivens*; the concerns express in *Kelly Property Development, Inc.*; and any other pertinent factors brought to light by future litigation." *Id.* at 48

Since *Binette*, "courts have been quite reluctant to recognize direct causes of action for violations of other provisions of the Connecticut Constitution."  *Silvera v. Connecticut Dep't of Corr.*, 726 F. Supp. 2d 183, 199 (D. Conn. 2010); *Crowley v. Town of Enfield,* No. 3:14 cv 01903 (MPS), 2015 WL 4162435, at *4 (D. Conn. July 9, 2015) (citing same and collecting cases); *but see Doe v. City of Hartford*, No. *Doe v. City of Hartford*, No. A 3:03 cv 1454 (JCH), 2004 WL 1091745, at *3-4 (D. Conn. May 13, 2004) (denying motion to dismiss because the court was "not prepared to conclude that the Connecticut Supreme Court would not allow a cause of action for monetary damages under Section 8").  In the year following *Binette*, the Connecticut Supreme Court resolved not to recognize a private damages action under Article First, § 8, where a property owner claimed that his substantive due process rights were violated by a municipality's intentional abuse of eminent

28

domain power. *ATC Partnership v. Town of Windham*, 251 Conn. 597, 613 (1999); *see also Kelley Property Development, Inc. v. Lebanon*, 226 Conn. 314 (1993) (declining to infer existence of *Bivens* style cause of action under Article First, § 8 in similar context).

However, assuming that a Connecticut state court construed the due process clause of Article First, § 8 of the Connecticut Constitution as affording protection from a "state-created danger," as the Second Circuit has done in interpreting the Due Process Clause of the Fourteenth Amendment, some of the factors set forth in *Binette's* "multifactor analysis," considered against the particular circumstances of this case, arguably weigh in favor of recognizing a private damages action under the state due process clause. Persuaded by the rationale espoused in *Bivens*, the *Binette* Court recognized a private damages action for constitutional violations based largely on grounds that the state legislature had "neither prohibited the creation of a constitutional tort action to remedy unlawful search seizure, nor crafted a meaningful alternative remedy" that provided adequate redress for the particular "emotional and psychological" harm and "breach of trust" that results from law enforcement's "abuse of authority." *Id.* at 43-44. Thus, in *Binette*, neither the common law nor a state statute provided adequate redress for the harm caused by law enforcement's unreasonable and unlawful conduct. So too it would seem here. This Court knows of no statutory or common law cause of action that provides adequate redress for the deprivation of rights secured by the state due process clause resulting from a danger created by the state. However, as stated above, I think the question is best left for the state courts to decide.

In reaching this conclusion I agree with and adopt the reasoning set forth in *Lopez v. Smiley*, 375 F. Supp. 2d 19 (D. Conn. 2005) (Kravitz, *J.*). In that case, the court declined to exercise supplemental jurisdiction over plaintiff's Connecticut constitutional claims, concluding that in light

of federalism and comity concerns, and the fact that the *Binette* Court did not intend to create an action for money damages for every alleged violation of the Connecticut constitution, the viability of state constitutional torts should be determined on a case-by-case basis by Connecticut state courts in the first instance.  *Id.* at 25-26 (citing, among other authorities, *Young v. New York City Transit Auth.*, 903 F.2d 146, 163-64 (2d Cir. 1990) (district courts should not "deprive state courts of opportunities to develop and apply state law" (internal quotation marks omitted)); *Silvera v. Connecticut Dep't of Corr*, 726 F. Supp. 2d at 199; *see also Crowley v. Town of Enfield*, 2015 WL 4162435, at *4 (adopting *Lopez* and *Silvera* rationale as grounds to decline supplemental jurisdiction).  Plaintiff's claims arising under Article First, § 8 of the Connecticut Constitution will therefore be dismissed without prejudice to his right to assert those claims in state court.

## C.    Negligence (Shanley, Suski and Wojenski)

The Southington Defendants also move to dismiss Plaintiff's claims against Shanley, Suski, and Wojenski based on common law negligence.  The complaint alleges that those officers were negligent and careless in that they: (1) failed to supervise and control the arrest of Plaintiff by the Plainville Police; (2) permitted inaccurate and incorrect information to be transmitted to transmitted to the Plainville Police; (3) failed to have the information provided by Lisa Gothberg fully and completely investigated before they relied upon it; (4) failed to provide the Plaintiff with an opportunity to voluntarily surrender himself on the arrest warrant; (5) failed to protect the Plaintiff from the assault and battery committed by Plainville police officers; (6) failed to properly evaluate and appraise the situation then and there existing when they directed the capture and arrest of Plaintiff at the Loews theater; (7) failed to instruct and direct Southington Officers under their control and supervision to protect the Plaintiff from Plainville's expected use of excessive and

unnecessary force during the seizure; (8) failed to instruct and direct other Southington officers under their control and supervision to protect the Plaintiff from the assault and battery committed by Plainville police officers; (9) failed to attempt to contact Plaintiff or assess the accuracy of the information relayed to Plainville Police; (10) failed to assess the accuracy of the information provided by Lisa Gothberg regarding Plaintiff's state of mind, despite knowing that Plaintiff and Lisa Gothberg were in a bitter divorce and custody fight; (11) unnecessarily placed the Plaintiff in grave danger, hazard, and peril; (12) permitted Plainiville Officers who they knew or should have known did not possess the necessary skill and training in handling their service pistols to attempt a gun point arrest; (13) permitted Plainville Police to believe that Plaintiff possessed at least three hand guns and was mentally unstable, when he knew that Plaintiff's home was seized and inaccessible to Plaintiff and the only handgun Plaintiff owned was already in Southington Police custody, and Plaintiff had voluntarily spoken to them the day before. Doc. [88-3] (count 25 at ¶ 48.a-m); (count 30 at ¶ 48.a-m); (count 35 at ¶ 48.a-m).

The Southington Defendants argue that the negligence claims are barred by the doctrine of governmental immunity.  Under Connecticut law, "[m]unicipal officals are immune from liability for negligence arising out of their discretionary acts." *Doe v. Petersen*, 279 Conn. 607, 614 (2006). It is well-settled that the acts or omissions of police officers in the exercise of their duties are discretionary in nature. *Gordon v. Bridgeport Hous. Auth.*, 208 Conn. 161, 179-80 (1988).  Plaintiff concedes that the actions of the Southington officers were discretionary in nature, but argues that the identifiable victim/imminent harm exception to the doctrine of governmental immunity applies in these circumstances.  Pursuant to that exception, "[d]iscretionary act immunity is abrogated when the circumstances make it apparent to the public officer that his or her failure to act would be likely

to subject an identifiable person to imminent harm." *Doe v. Petersen*, 279 Conn. at 616.

The imminent harm/identifiable person "exception to the general rule of governmental immunity for employees engaged in discretionary activities has received very limited recognition in [Connecticut]." *Grady v. Town of Somers*, 294 Conn. 324, 350 (2009). Connecticut state courts have applied the exception when "the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm. . . . By its own terms, this test requires three things: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm." *Doe v. Petersen*, 279 Conn. 607, 616 (2006). The failure to establish any one of the three prongs precludes the application of the identifiable person subject to imminent harm exception. *See Violano v. Fernandez*, 280 Conn. 310, 329 (2006).

The Southington Defendants argue that the complaint does not satisfy the apparentness requirement of the imminent harm/identifiable person exception because it does not allege that the "Southington defendants knew or had reason to know that the Plaintiff officers would resort to lethal force in effecting the arrest of the plaintiff." Doc. [61] at 8. "In fact," say the Southington Defendants, "it is not even alleged that defendant, Michael Shanley, was at the scene of the incident and it, therefore, would be impossible for him to have first-hand knowledge of any conduct in the course of the plaintiff's arrest that would subject the plaintiff to imminent harm." *Id.* at 8-9.

With respect to the Southington Defendants' argument that Shanley could not have been aware of an imminent harm since he was not present when Plaintiff was arrested and allegedly shot, the Connecticut Supreme Court and the Connecticut Appellate Court have repeatedly declined to abrogate governmental immunity where the public official lacked awareness of the imminent harm.

32

*See, e.g, Edgerton v. Clinton*, 311 Conn. 217, 227 (2014) (exception did not apply where it could not have been apparent to dispatcher that her failure to stop pursuit by volunteer firefighter would subject person he was pursuing to imminent harm); *Fleming v. City of Bridgeport,* 284 Conn. 502, 510 (2007) (exception did not apply to officers accused of unlawfully removing plaintiff from apartment because officers did not know that plaintiff was a resident of the apartment); *Doe v. Petersen*, 279 Conn. at 619 (exception did not apply because town official "never became aware of the alleged assault, [so] it could not have been apparent to him that his response to the plaintiff's concerns would have been likely to subject her to a risk of harm); *Shore v. Stonington*, 187 Conn. 147, 154 (1982) (exception did not apply to officer alleged to be negligent in failing to detain drunk driver who killed decedent because it would not have been apparent to the officer that his failure to act would have subjected decedent to imminent harm). *Bailey v. West Hartford*, 100 Conn. App. 805, 813-14 (2007) (exception did not apply when there was no allegation that responding firefighters were aware that decedent was present in burning house, because "it would be impossible for the defendants to understand the risk of death without knowing that the decedent was in the house when the building was on fire").

In the context of a motion to dismiss (or motion to strike, as it is styled in state court), the Connecticut Appellate Court, in *Merritt v. Town of Bethel Police Dep't*, 120 Conn. App. 806, 816 (2010), concluded that the trial court properly granted defendants' motion to strike where the complaint failed to allege that the public officials were aware of an imminent harm. In that case, the plaintiff's decedent was shot by members of a Rhode Island gang outside the Masonic Temple in Bethel, where the decedent was attending a party. The Bethel police department, including defendant officers DiRago and Morris, had information that prior criminal activity had taken place

33

at the Masonic Temple, that a scuffle had occurred shortly before the shooting and that gang members were at the party. Also, at the time of the shooting, DiRago and Morris had been stationed in an adjacent parking lot where they were monitoring the activities taking place at the Masonic Temple. When they heard gunshots, the two police officers went to the scene and found the decedent mortally wounded. *Id.* at 809. The appellate court reasoned that though plaintiff had "alleged that her decedent attended a party at the Masonic Temple, that gang members were present, that a scuffle had occurred shortly before the shooting, that the police where aware that prior criminal activity had taken place there and that the police were monitoring the activities taking place there at the time of the shooting," the exception to governmental immunity for an identifiable person subject to imminent harm did not apply because nothing in the complaint demonstrated that "DiRago, Morris or the Bethel police department knew the decedent or of his presence at the Masonic Temple or that they had a prescient knowledge that he would be shot in the early morning hours of November 27, 2004." *Id.* at 815.

The complaint at bar alleges that "Shanley knew or should have known that providing . . . unverified and inaccurate information to the Plainville Police would cause them to view Plaintiff as extremely dangerous, and to act with extreme and unrestrained haste, and use extreme and unrestrained force in their attempt to seize Plaintiff." Doc. [88-3] (count 25 at ¶ 41). As an initial matter, what Shanley "should have no known" is of no moment to the imminent harm/identifiable victim exception analysis because the exception, by its plain terms, is concerned with what was "apparent" to the public official. The "apparentness" requirement is grounded in the rationale that public official should be unafraid to exercise their discretion. *Doe v. Petersen*, 279 Conn. at 616. To hold public officials liable for their failure to respond adequately to harm that was not apparent

to them, would run counter to that rationale.  *Id.*

The complaint contains well-pleaded allegations suggesting that the Plainville Police Department's impending use of excessive of force was an imminent harm, and that Plaintiff, as the subject of an arrest warrant, was an identifiable victim.  But the complaint does not plausibly allege that Shanley knew of the Plainville Police's imminent use of excessive force.  The decision of officers Mullaney and Eno to shoot at Plaintiff was one necessarily made in the heat of the moment and the context of the arrest.  Shanley, who was not present at the Loews theater when those officers allegedly fired upon Plaintiff, could not have been aware of Plaintiff's imminent risk of harm.  In this regard, Shanley is not unlike officers DiRago and Morris in *Merritt v. Town of Bethel Police Dept*, who, geographically removed from the scene of the crime, lacked "prescient knowledge" that the decedent would be shot.  120 Conn. App. at 816.  I therefore conclude that the imminent harm/identifiable person exception does not apply to Shanley's conduct, and that Shanley is protected by the doctrine of governmental immunity.  The negligence claim asserted against him will be dismissed.

I conclude, however, that the negligence claims at Suski and Wojenski  survive at this stage of the proceedings. Though the complaint does not expressly allege that those officers "knew or had reason to know" of the imminent harm that allegedly befell Plaintiff, drawing all reasonable inferences in Plaintiff's favor, as this Court is required to do when analyzing the sufficiency of a complaint, I conclude that the complaint, by apparently placing Suski and Wojenski at the scene of Plaintiff's arrest, plausibly alleges that those officers were aware that their failure to respond to the Plainville officers' use of excessive force would subject Plaintiff to imminent harm.  Discovery may reveal that Suski and Wojenski were not even present when Plaintiff was apprehended, were not

aware that their failure to act would subject Plaintiff to an imminent harm, or had no opportunity to intervene and protect Plaintiff from such imminent harm. *Cf Morales v. Town of Glastonbury*, No. 3:09 cv 713 (JCH), 2012 WL 124582, at *10 (D. Conn. Jan. 17, 2012) (denying officer's motion for summary judgment on common law claims where there were genuine issues of material fact as to whether officer had an opportunity to intervene to prevent the use of excessive force). Should discovery bring such uncontested facts to bear, those officers would enjoy governmental immunity and the case would be fit for summary disposition on Plaintiff's negligence claim in favor of Suski and Wojenski.

**D.      Conn. Gen. Stat. §52-557n (Town of Southington)**

Counts 26, 31, 36, and 40 the complaint alleges that the Town of Southington is liable for the negligence of Shanley, Suski and Wojenski pursuant to Connecticut General Statutes § 52-557n.[9] Specifically, the complaint alleges that Southington is liable for Shanley's negligence in count 26, liable for Suski's negligence in count 31, liable for Wojenski's negligence in count 36, and liable for the joint negligence of Shanley, Suski and Wojenski in count 40.

In counts 29, 34, and 39, the complaint alleges or strongly implies that the Town of

---

[9]Conn. Gen. Stat. § 52-557n(a)(1) states, in relevant part:

Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties. . . . Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.

Southington is liable under § 52-557n for the respective conduct of those officers depriving Plaintiff of his *civil rights*.   Counts 29, 34 and 39 also allege that the Town of Southington is required to indemnify the Southington Officers pursuant to Conn. Gen. Stat. § 7-465.   That theory of liability is discussed, *infra* in subpart E of this section.

"Under Conn. Gen. Stat. § 52-557n, [a municipality] is liable for negligent acts committed by its agents while acting within the scope of their employment."   *Carey v. Maloney*, 480 F. Supp. 2d 548, 566-67 (D. Conn. 2007) (footnote omitted).   While a municipality is exempt from liability for "negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law," the Connecticut Supreme Court continues to apply the common law exceptions to governmental immunity, including the imminent harm/identifiable person exception, discussed *supra*.   *See Doe v. Petersen*, 279 Conn. 607, 614, 903 A.2d 191, 197 (2006).[10]   Because, as stated above, Shanley is immune from the negligence claim, the Town of Southington's motion to dismiss count 26 of the complaint will be granted.   Its motion will be denied with respect to counts 31, 36, and 40, since, as discussed above, I cannot conclude at this juncture that Suski and Wojenski are immune from negligence liability.

With respect to counts 29, 34, and 39, § 52-557n, by its plain terms, holds a municipality liable for the "negligent acts or omissions" of its employees.   Conn. Gen. Stat. § 52-557n(a)(1)(A).

---

[10] Since *Petersen*, in addition to applying the exceptions to governmental immunity to the conduct of individuals, the "prevailing opinion of the lower courts in Connecticut appears to be in favor of applying the identifiable victim/imminent harm exception to municipal immunity too." *Seri v. Town of Newtown*, 573 F. Supp. 2d 661, 672-73 (D. Conn. 2008); *see also Cooper v. City of Hartford*, No. 3:07 cv 823 (JCH) 2009 WL 2163127, at *27 (D. Conn. July 21, 2009) (adopting the "prevailing opinion").   Absent an argument from the Southington Defendants suggesting otherwise, I adopt the "prevailing opinion," which has been embraced by at least one other court in this District, and which is consistent with the Connecticut Supreme Court's treatment of the issue in *Petersen*.

Plaintiff, without citation to authority, states that "if any of [his] *civil rights* claims under § 1983 are found to be viable . . . then the corresponding indemnification claim under . . . § 52-557n [is] viable and should not be dismissed."  Doc. [57] at 34 (emphasis added).  In light of the plain terms of § 52-557n holding municipalities liable only for *negligence*, and absent any authority offered by Plaintiff suggesting a different construction, I cannot conclude that § 52-557n subjects municipalities to liability for their employees' civil rights violations.  Accordingly, the Southington Defendants claims based on § 52-557n liability for civil rights violations in counts 29, 34, and 39 will be dismissed.[11]

## E.   Conn. Gen. Stat. § 7-465 (Town of Southington)

Finally, counts 27, 29, 32, 34, 37, 39, and 41 of the complaint allege that the Town of Southington is required to indemnify the Southington Officers pursuant to Conn. Gen. Stat. § 7-465.[12]   Section 7-465 legally obligates a municipality to pay all sums that its employees are

---

[11] Even if this conclusion is wrong, and § 52-557n is in fact intended to hold municipalities liable for civil rights violations committed by their employees, an exception to liability under that statute would apply in this case given that the complaint's cognizable Section 1983 claims are based on the Southington Officers' *intentional* misconduct.  *See* § 52-557n(a)(2)(A) (a municipality "shall not be liable for damages to person or property caused by . . . [a]cts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice, or *wilful misconduct*") (emphasis added).  *See also Miner v. Town of Cheshire*, 126 F. Supp. 2d. 184, 194 (D. Conn. 2000) ("Under Connecticut law, the term "willfulness" is synonymous with "intentional.").

[12] Conn. Gen. Stat. § 7-465 states, in relevant part:

Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of any employee of such municipality ... all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property . . . if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty.

"obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property," provided the employee's actions were not "willful or wanton" and he or she was acting within the scope of his or her employment.

The "willful or wanton" exception to § 7-465 applies to Plaintiff's cognizable Section 1983 claims, which I have concluded are based on the Southington Officers' alleged intentional violation of Plaintiff's Fourteenth Amendment rights.[13]  The Court will therefore dismiss those portions of counts 29, 34, and 39 of the complaint that allege that the Town of Southington is required to indemnify Plaintiff for the civil rights violations caused by the Southington Officers.  Therefore, because I concluded, *supra*, that the complaint does not state a claim against the Town of Southington for Shanley's negligence under § 52-557n, count 29 will be dismissed in its entirety. Counts 34 and 39 survive to the extent they allege that the Town of Southington is liable for Suski's and Wojenski's negligence under § 52-557n.

Furthermore, because I conclude that Shanley is immune from a negligence cause of action, the indemnification claim asserted against the Town of Southington for his negligent conduct in count 27 will also be dismissed.  The Southington Defendants' motion to dismiss counts 32, 37 and 41, which seek indemnification based on the negligence of Suski and Wojenski, will be denied.

## IV

We turn next to Plaintiff's motion to substitute.  During the pendency of this litigation

---

[13] Indeed, in addition to alleging that the Southington Officers intended to violate Plaintiff's Fourteenth Amendment rights by transmitting inaccurate and inflammatory information to the Plainville police, the complaint expressly characterizes the misrepresentations made by Suski and Wojenski as "willful and wanton."  Doc. [88-3] (counts 33 and 38 at ¶ 48).

Michael Shanley passed away.  Plaintiff has filed a motion pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure to substitute the executor of Shanley's estate as a party defendant.  The Southington Defendants oppose the motion on grounds that substitution is precluded by exceptions designated in Connecticut's survival statute, Conn. Gen. Stat. § 52-599.  The Court reserved decision on Plaintiff's motion to substitute following a hearing on the motion held on June 2.  I decide that motion now.

Rule 25(a) allows substitution "[i]f a party dies and the claim is not extinguished."  Fed. R. Civ. P. 25(a)(1).  The question of whether federal constitutional clams abate upon the death of a party is question of state law:

> State law governs survival of civil rights claims under 42 U.S.C. § 1983 and other federal civil rights statute.  This is because of the application of 42 U.S.C. § 1988.  That statute provides that, for purposes of these actions, federal law incorporates the law of the forum state when the federal law is 'deficient in the provisions necessary to furnish suitable remedies,' provided the state law is not inconsistent with federal law of the Constitution.

6 Moore's Federal Practice 3d. § 25.11[4] (Matthew Bender ed.) (quoting 42 U.S.C. § 1988).  Pursuant to Conn. Gen. Stat. § 52-599(a), "[a] cause or right of action shall not be lost or destroyed by the death of any person, but shall survive in favor of or against the executor of administrator of the deceased person."  *Id.*  "The only exceptions to the broad sweep of this provision are those set forth in § 52-599(c)," *Comm'n on Human Rights & Opportunities v. Greenwich Catholic Elementary Sch. Sys., Inc.*, 202 Conn. 609, 614 (1987): "(1) . . . any cause or right of action or . . . any civil action or proceeding the purpose or object or which is defeated or rendered useless by the death of any party thereto, or (2) . . . any civil action or proceeding whose prosecution or defense depends upon the continued existence of the persons who are plaintiffs or defendants, or (3) . . . any civil action upon

a penal statute."

The Southington Defendants contend that any claims against Shanley that would survive its Fed. R. Civ. P. 12(c) motion would be barred by § 52-599(c)'s second and third exceptions. They first argue that Shanley's defense to claims based on allegations of recklessness or intentional misconduct depend upon his "continued existence" since he is the only person who could have refuted such allegations. The Court disagrees.

In construing General Statutes § 52-599, Connecticut state courts have held that the "survival of actions is the rule and not the exception, and the presumption is that every cause or right of action survives until the contrary is made to appear." *Terwilliger v. Terwilliger*, 29 Conn. Sup. 465, 469, 293 A.2d 12 (Conn. Super. 1971); *see also CHRO v. Greenwich*, 202 Conn. at 614 (holding that the death of a complainant does not defeat her claim for monetary relief resulting from the termination of her employment because of the admissibility of decedent's declarations under General Statutes § 52-172 and other evidence available through investigation); *Moen v. Baransky*, No. CV 960054578, 1996 WL 927978, at *3 (Conn. Super. Ct. Oct. 10, 1996) (holding that death of defendant who allegedly abused daughter sexually did not abate upon his death because executor of defendant's estate would "have the opportunity, inter alia, to present evidence of the plaintiff's motive and attack her credibility through the testimony of other witnesses"); *Hornack v. Koehler*, No. CV 93 0061563, 1995 WL 299622, at *1 (Conn. Super. Ct. May 11, 1995) (holding that action seeking damages for emotional distress survives the death of defendant because burden of proving elements of the tort rests with the plaintiff). In concluding that the cause of action survives, § 52-599(c)(2) notwithstanding, courts have been persuaded by "the availability of evidence other than the testimony of the deceased and the fact that the burden of proof rests with the plaintiff." *Moen v. Baransky*,

1996 WL 927978, at *3.

Moreover, Connecticut state courts have repeatedly rejected the argument that causes of action based on a defendant's state of mind should abate under § 52-599(c)(2). In *Welcome v. Ouelette-McGregor*, No. CV010811039, 2002 WL 31761983 (Conn. Super. Ct. Nov. 21, 2002), the defendant-decedent was alleged to have recklessly operated a motor vehicle. The executor of the decedent's state argued that the recklessness claim was precluded by § 52-599(c)(2) since the decedent's testimony was necessary to determine his state of mind at the time of the accident. Former Connecticut Appellate Court Judge Hennessy, sitting on the Connecticut Superior Court, rejected that argument with this rationale:

> The state of mind of recklessness may . . . be inferred from conduct. . . . In addition . . . the plaintiff is the party that has the burden of demonstrating the [defendant-decedent's] state of mind at the time of the accident. At trial, the [defendant-executor] will have the opportunity to refute the plaintiff's evidence. This court does not believe that the [executor's] ability to offer a defense to the present action will be impaired by [the decedent's] death to the extent that the plaintiff's action should be stricken.

*Welcome v. Ouelette-McGregor*, 2002 WL 31761983, at *2 (citations, brackets and internal quotation marks omitted). At least three other courts have adopted Judge Hennessy's reasoning, concluding that causes of action encompassing a state of mind requirement were not precluded by § 52-599(c)(2). *Broschart v. Reale,* No. CV126009318, 2012 WL 1510967, at *1 (Conn. Super. Ct. Apr. 11, 2012); *Maiorino v. Murphy*, No. CV106010586, 2010 WL 5610688, at *5 (Conn. Super. Ct. Dec. 15, 2010); *Lockhart v. Naccarato*, No. CV095005428S, 2009 WL 5511251, at *4 (Conn. Super. Ct. Dec. 16, 2009). This Court agrees with that authority.

In order to prevail on his Section 1983 claim, Plaintiff bears the burden of proving that

Shanley acted with the requisite state of mind to deprive Plaintiff of his substantive due process rights. Should this case proceed to trial, the late Lieutenant Shanley's true intentions may be inferred from the testimony of any number of witnesses — including Lisa Gothberg and Plainville and Southington police officers — who will be in a position to testify about Shanley's investigation of Plaintiff and whether he caused inaccurate information about Plaintiff to be transmitted to the Plainville police. Furthermore, should Plaintiff take the stand and paint Shanley as an officer determined to violate Plaintiff's civil rights, Shanley's estate may put forth evidence attacking Plaintiff's credibility and his motive for bringing the cause of action. I therefore conclude that Shanley's defense to Plaintiff's Section 1983 claim is not dependent on his "continued existence."

The Southington Defendants also contend that the Section 1983 claim asserted against Shanley is essentially punitive in nature and therefore a cause of action which is "based upon a penal statute" within the meaning of § 52-599(c)(3). They do not point, however, to any authority that characterizes 42 U.S.C. § 1983 as a penal statute and candidly admit that "federal courts have not expressly stated that punishment is a purpose of § 1983." Doc. [98] at 9.

The term "penal statute" has been variously defined in the Connecticut state courts. In *Guida v. Comm'r of Corr.*, No. CV 88 543, 1991 WL 27894, at *2 (Conn. Super. Ct. Jan. 16, 1991) *aff'd sub nom. Guida v. Comm'r of Correction*, 221 Conn. 402, 604 A.2d 356 (1992), the court, citing *Ballentine's Law Dictionary*, 3rd ed. (Lawyers Co-op Pub. Co., 1969), stated that a "penal statute" is one "which defines and prescribes the punishment for a criminal offense." *Id.* (internal quotation marks omitted). The court also cited with approval the discussion of a penal statute in the Second Edition of *American Jurisprudence*:

> Strictly speaking, a penal statute is one which imposes a punishment

> for an offense committed against the state. It is the substance and
> effect of the statute, rather than its form, that are to be considered in
> determining whether it is penal.  The test whether a law is penal, in
> the strict and primary sense, is whether the wrong sought to be
> redressed is a wrong to the public or a wrong to the individual.  The
> term is, however, frequently extended to include any act which
> imposes a penalty, or creates a forfeiture.  A retaliatory statute has
> also been regarded as penal in nature.

*Id.*  (citing 73 Am. Jur. 2d Statutes, Sec. 12); *see also Mendygral v. New Haven*, 21 Conn. Supp. 397,

398-99 (1959) ("The test whether a law is penal, in the strict and primary sense, is whether the wrong

sought to be redressed is a wrong to the public, or a wrong to the individual." (internal quotation

marks omitted).  Other courts have emphasized that a penal statute generally does not include

statutes authorizing a private right of action.  *Mobil Oil Corp. v. Killian* 30 Conn. Supp. 87, 99

(1973) (stating "the expression penal statutes, does not ordinarily include statutes which give a

private action against a wrong-doer"); *accord Plumb v. Griffin*, 74 Conn. 132, 50 A. 1, 2 (1901)

(internal quotation marks altered and citations omitted).

In *Holcomb v. Kovacs*, No. CV030481239S, 2006 WL 697606  (Conn. Super. Ct. Mar. 7,

2006), a case on which the Southington Defendants rely, the court concluded that a private cause of

action based on Conn. Gen. Stat. § 14-295 was overwhelmingly penal in nature and thus not

precluded by § 52-599(c)(3).  *Cf. Salvatore v. Rabis*, No. CV054007155S, 2006 WL 1828115, at *1

(Conn. Super. Ct. June 9, 2006) (concluding that Conn. Gen. Stat. § 14-295 is not a penal statute).

Section 14-295 authorizes the trier of fact to award "double or treble damages" in motor vehicle

actions involving reckless misconduct.  The court observed that though "§ 14-295 does not itself

define or prescribe the punishment for any criminal offense . . ."[i]t does . . . incorporate by reference

some statutes which do both define and prescribe punishment for criminal offenses."  The statutes

§ 14-295 incorporates by reference, the court reasoned, "describe wrongs against the State of Connecticut, which has a clear interest in ensuring the safety of travel upon its public highways." *Holcomb*, 2006 WL 697606 at *3.

The reasons that the court in *Holcomb* had for concluding that § 14-295 is a penal statute do apply to whether 42 U.S.C. § 1983 is also penal in nature.  Unlike § 14-295, Section 1983 does not prescribe "double and treble damages," it does not incorporate criminal statutes by reference, and quite contrary to prescribing a remedy for a wrong done *to* the state, it authorizes a private cause of action for a wrong done *by* the state. It would require the most strained reading of 42 U.S.C. § 1983 and § 52-599(c)(3) to conclude that the former is a "penal statute" within the meaning of the latter.

In essence, Plaintiff argues that Section 1983 is a "penal statute" because the complaint alleges punitive damages.  By that logic any statutory cause of action seeking punitive damages would be rendered a penal statute and thus precluded under § 52-599(c)(3).  I do not think the Connecticut legislature intended such a result.

## V

We turn last to Plaintiff's motion pursuant to Fed. R. Civ. P. 17(a)(3) to substitute the trustee of Plaintiff's bankruptcy estate as the real party of interest in this litigation, and his concomitant motion under Fed. R. Civ. P. 15(a) to amend the complaint in order to reflect the requested substitution.

In support of his motions, Plaintiff represents the following. On July 30, 2012, after the incident giving rise to this litigation, he and his wife, Lisa Gothberg, filed a Chapter 7 bankruptcy petition.  The bankruptcy court designated attorney John J. O'Neil Jr., Esquire, as the Chapter 7 trustee.  Attorney O'Neil listed this cause of action as an asset in the Gothberg bankruptcy estate and

45

participated in a settlement conference held in this matter before Magistrate Judge Garfinkel. Neither the Plainville nor the Southington Defendants object to Plaintiff's motion to substitute the Chapter 7 bankruptcy trustee or his motion to amend to the complaint to reflect that substitution.

"A Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or participants." *Advanced Magnetics, Inc. v. Bayfront Partners*, 106 F.3d 11, 20 (2d Cir. 1997). Absent objection, and in light of the fact that the substitution is merely formal and does not alter the original complaint, Plaintiff's motion to substitute the bankruptcy trustee and motion to amend the complaint to reflect that substitution will be granted.

## VI

For the reasons stated above, the Southington Defendants' motion for judgment on the pleadings (Doc. #52) is GRANTED IN PART AND DENIED IN PART.

Plaintiff's motion to substitute the executor of the estate of Michael Shanley (Docs. ## 71 and 83) is GRANTED.

Plaintiff's motions to substitute the bankruptcy trustee and to amend the complaint to reflect that substitution (Doc. #101) is GRANTED.

It is SO ORDERED.

Dated:   New Haven, Connecticut
         September 3, 2015

                                         */s/ Charles S. Haight, Jr.*
                                         CHARLES S. HAIGHT, JR.
                                         Senior United States District Judge

46